UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2009 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>ANGEL TOY CORPORATION,<br>LING YU,<br>MEICHUN CHENG HUANG,<br>   aka "Mei Huang,"<br>   aka "Mei Chun Cheng Huang,"<br>XIAOXIN JU,<br>   aka "Judy," and<br>JOSE LEONARDO CUEVAS OTALORA,<br>   aka "Leonardo Cuevas,"<br><br>        Defendants. | CR 10 00718<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy to Structure Financial Transactions and to Smuggle Bulk Cash; 18 U.S.C. § 1956(h): Conspiracy to Launder Money; 31 U.S.C. § 5324(c)(3): Structuring the Exportation of Monetary Instruments; 18 U.S.C. §§ 1512(b)(1), (b)(2): Tampering With a Witness; 31 U.S.C. § 5317(c)(1): Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

A. INTRODUCTION

At all times relevant to this Indictment:

1. Defendant ANGEL TOY CORPORATION ("ATC") was a business located in downtown Los Angeles, in Los Angeles County, within the Central District of California.

SL:VOCS

2.  Defendants LING YU ("YU"), MEICHUN CHENG HUANG, also known as ("aka") "Mei Huang," aka "Mei Chun Cheng Huang" ("HUANG"), and XIAOXIN JU, aka "Judy" ("JU"), were employed by ATC.  YU and HUANG were co-owners of ATC with other unindicted individuals.  Defendant JOSE LEONARDO CUEVAS OTALORA, aka "Leonardo Cuevas" ("CUEVAS"), owned Angel Toys Colombia, located in Bogota, Colombia.

3.  Defendant ATC maintained the following two bank accounts, each in the name of ATC, at Bank of America ("BOA"): BOA account number ending in 3388 and BOA account number ending in 5718.  Defendants YU and HUANG were signatories on both BOA accounts.  BOA's deposits were insured by the Federal Deposit Insurance Corporation.

4.  Pursuant to Title 31, United States Code, Section 5313, and regulations thereunder, including Title 31 of the Code of Federal Regulations, domestic financial institutions were required to prepare and file Currency Transaction Reports ("CTRs") to report cash transactions over $10,000 involving the financial institution.  To complete the CTR form, such financial institutions were required to verify and record the name and address of the person presenting the transaction, and the identity, account number, and social security or taxpayer identification number, if any, of any person or entity on whose behalf the transaction was to be effected.

B.  <u>OBJECT OF THE CONSPIRACY</u>

Beginning on a date unknown, and continuing to on or about July 1, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendants ATC, YU, HUANG, JU, and

CUEVAS, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit an offense against the United States, in violation of Title 18, United States Code, Section 371, namely, to structure and assist in structuring financial transactions with domestic financial institutions affecting interstate and foreign commerce, for the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a) and the regulations thereunder, in violation of 31 U.S.C. § 5324(a)(3).

C. <u>MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED</u>

The object of the conspiracy was to be accomplished, in substance, as follows:

1. Defendants YU and HUANG would instruct certain Colombian and Mexican clients, either directly or through defendant ATC's sales staff, that these clients could deposit cash directly into defendant ATC's bank accounts or bring cash to defendant ATC.

2. Defendants YU, HUANG, and JU would instruct certain ATC employees that defendant ATC should not accept cash deposits of more than $10,000 at one time.

3. For cash deliveries exceeding $10,000, defendants YU, JU, or another ATC employee would break up the currency into portions less than $10,000, and defendants YU, HUANG, or JU would then deposit these smaller sums into defendant ATC's bank accounts, or direct another ATC employee to deposit these smaller sums into defendant ATC's bank accounts.

4. ATC employees would keep records of all cash brought

3

into defendant ATC and all deposits made into defendant ATC's bank accounts.

5. Certain ATC clients, including defendant CUEVAS, would ensure that deposits made by the client, or on the client's behalf, were in sums less than $10,000.

6. Once deposits under $10,000 were made on defendant CUEVAS' behalf, defendant CUEVAS would confirm defendant ATC's receipt of those deposits and ensure that those deposits were credited towards his account at defendant ATC.

7. Defendant JU, who worked as the accountant at defendant ATC, would keep records of deposits made by third parties into defendant ATC's bank accounts and credit the deposits to the designated ATC client.

D. **OVERT ACTS**

In furtherance of the conspiracy, and to accomplish the object of the conspiracy, defendants ATC, YU, HUANG, JU, and CUEVAS, and others known and unknown to the Grand Jury, committed various overt acts, on or about the following dates, within the Central District of California, and elsewhere, including, but not limited to, the following:

1. On September 28, 2005, defendants HUANG and JU authorized the receipt of approximately $100,000 in cash at defendant ATC, and defendant ATC later deposited this cash in a bank account controlled by defendant ATC in the form of multiple deposits in sums less than $10,000.

2. On December 6, 2005, defendants HUANG and JU authorized the receipt of approximately $150,000 in cash at defendant ATC, and defendant ATC later deposited this cash in a bank account

4

controlled by defendant ATC in the form of multiple deposits in sums less than $10,000.

3. On December 23, 2005, defendants YU and JU authorized the receipt of approximately $149,900 in cash to be credited to defendant CUEVAS' account with defendant ATC, and defendant ATC later deposited this cash in a bank account controlled by defendant ATC in the form of multiple deposits in sums less than $10,000.

4. On December 28, 2005, defendants YU and JU authorized the receipt of approximately $150,000 in cash to be credited to defendant CUEVAS' account with defendant ATC, and defendant ATC later deposited this cash into a bank account controlled by defendant ATC in the form of multiple deposits in sums less than $10,000.

5. On July 11, 2006, defendant JU confirmed defendant ATC's receipt of cash deposits of $7,000 and $6,000, made on July 10, 2006, for defendant CUEVAS.

6. On October 9, 2006, defendant CUEVAS sent a fax to defendant ATC confirming defendant ATC's receipt of the following cash deposits to be credited to defendant CUEVAS' account: $9,480 on October 6, 2006; $8,485 on October 4, 2006; $9,315 on October 3, 2006; and $9,600 on October 3, 2006.

7. On March 26, 2007, defendant CUEVAS sent a fax to defendant ATC confirming defendant ATC's receipt of the following cash deposits to be credited to defendant CUEVAS' account: $4,300 on March 23, 2007; $5,100 on March 22, 2007; $4,525 on March 21, 2007; and $4,525 on March 21, 2007.

8. On November of 2007, defendant CUEVAS sent a fax to

defendant ATC confirming defendant ATC's receipt of the following cash deposits to be credited to defendant CUEVAS' account: $9,000 on November 1, 2007, and $9,855 on November 2, 2007.

9. On January 10, 2008, defendants YU and JU authorized the receipt of approximately $46,200 in cash at defendant ATC, and defendant ATC later deposited this cash in a bank account controlled by defendant ATC in the form of multiple deposits in sums less than $10,000.

10. On March 14, 2008, an ATC sales representative sent an e-mail to defendant JU to confirm defendant ATC's receipt of the following deposits for defendant CUEVAS: $9,570 on March 12, 2008; $5,000 on March 12, 2008; $4,540 on March 12, 2008; and $9,230 on March 13, 2008.

11. On May 13, 2008, defendant JU authorized the receipt of approximately $50,000 in cash at ATC, and defendant ATC later deposited this cash in a bank account controlled by defendant ATC in the form of multiple deposits in sums less than $10,000.

12. On January 6, 2009, defendants YU and JU authorized the receipt of approximately $65,000 in cash at defendant ATC, and defendant ATC later deposited this cash in a bank account controlled by defendant ATC in the form of multiple deposits in sums less than $10,000.

### Structured Deposits of Cash

On or about the following dates, the following deposits of cash were made into BOA accounts belonging to defendant ATC:

| Overt Act | Date | Cash Deposited | BOA Account |
|---|---|---|---|
| 13. | 12/6/05 | $5,000.00 | **3388 |
| 14. | 12/7/05 | $9,744.98 | **3388 |

| Overt Act | Date | Cash Deposited | BOA Account |
|---|---|---|---|
| 15. | 12/9/05 | $8,651.25 | **3388 |
| 16. | 12/13/05 | $8,794.39 | **3388 |
| 17. | 12/15/05 | $9,484.00 | **3388 |
| 18. | 12/16/05 | $4,708.46 | **3388 |
| 19. | 12/19/05 | $9,940.32 | **3388 |
| 20. | 12/20/05 | $6,721.48 | **3388 |
| 21. | 12/21/05 | $8,330.00 | **3388 |
| 22. | 12/22/05 | $9,667.40 | **3388 |
| 23. | 12/23/05 | $7,158.48 | **3388 |
| 24. | 12/27/05 | $9,836.00 | **3388 |
| 25. | 12/28/05 | $7,201.04 | **3388 |
| 26. | 12/29/05 | $9,036.28 | **3388 |
| 27. | 12/30/05 | $9,851.04 | **3388 |
| 28. | 1/3/06 | $9,896.64 | **3388 |
| 29. | 1/4/06 | $9,302.00 | **3388 |
| 30. | 1/4/06 | $8,134.00 | **3388 |
| 31. | 7/11/06 | $8,000.00 | **5718 |
| 32. | 7/11/06 | $8,000.00 | **5718 |
| 33. | 7/12/06 | $8,000.00 | **5718 |
| 34. | 7/12/06 | $8,000.00 | **5718 |
| 35. | 7/12/06 | $6,500.00 | **5718 |
| 36. | 7/13/06 | $6,000.00 | **5718 |
| 37. | 7/14/06 | $5,000.00 | **5718 |
| 38. | 7/14/06 | $3,000.00 | **5718 |
| 39. | 7/17/06 | $1,500.00 | **5718 |
| 40. | 8/29/06 | $9,300.00 | **5718 |
| 41. | 8/30/06 | $9,300.00 | **5718 |
| 42. | 9/1/06 | $9,800.00 | **5718 |
| 43. | 9/5/06 | $9,500.00 | **5718 |
| 44. | 9/6/06 | $9,500.00 | **5718 |

| Overt Act | Date | Cash Deposited | BOA Account |
|---|---|---|---|
| 45. | 9/6/06 | $9,500.00 | **5718 |
| 46. | 9/7/06 | $9,500.00 | **5718 |
| 47. | 11/10/06 | $7,708.00 | **5718 |
| 48. | 11/10/06 | $9,000.00 | **5718 |
| 49. | 11/13/06 | $9,022.00 | **5718 |
| 50. | 11/14/06 | $9,018.00 | **5718 |
| 51. | 3/21/07 | $4,525.00 | **5718 |
| 52. | 3/21/07 | $4,525.00 | **5718 |
| 53. | 3/22/07 | $5,100.00 | **5718 |
| 54. | 3/23/07 | $4,300.00 | **5718 |
| 55. | 7/19/07 | $5,000.00 | **5718 |
| 56. | 7/23/07 | $5,000.00 | **5718 |
| 57. | 7/23/07 | $4,000.00 | **5718 |
| 58. | 7/24/07 | $6,000.00 | **5718 |
| 59. | 7/24/07 | $5,000.00 | **5718 |
| 60. | 7/24/07 | $4,000.00 | **5718 |
| 61. | 11/1/07 | $9,000.00 | **5718 |
| 62. | 11/2/07 | $9,855.00 | **5718 |
| 63. | 3/7/08 | $4,875.00 | **5718 |
| 64. | 3/7/08 | $4,875.00 | **5718 |
| 65. | 3/10/08 | $4,927.00 | **5718 |
| 66. | 3/10/08 | $4,425.00 | **5718 |
| 67. | 3/10/08 | $4,425.00 | **5718 |
| 68. | 3/11/08 | $9,820.00 | **5718 |
| 69. | 3/11/08 | $5,000.00 | **5718 |
| 70. | 3/11/08 | $4,960.00 | **5718 |
| 71. | 3/12/08 | $9,570.00 | **5718 |
| 72. | 3/12/08 | $5,000.00 | **5718 |
| 73. | 3/12/08 | $4,540.00 | **5718 |
| 74. | 3/13/08 | $9,230.00 | **5718 |

| Overt Act | Date | Cash Deposited | BOA Account |
|---|---|---|---|
| 75. | 1/30/09 | $8,000.00 | **5718 |
| 76. | 1/30/09 | $7,000.00 | **5718 |

COUNT TWO

[18 U.S.C. §§ 1956(h)]

A. INTRODUCTION

The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 7 of the Introduction to Count One.

B. OBJECTS OF THE CONSPIRACY

Beginning on a date unknown, and continuing until on or about July 1, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendant ANGEL TOY CORPORATION ("ATC"), and others known and unknown to the Grand Jury, knowingly and intentionally conspired and agreed with each other to commit the following offenses against the United States:

Knowing that property involved in a financial transaction represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, the unlawful distribution of controlled substances, defendant ATC and others known and unknown to the Grand Jury conducted and attempted to conduct financial transactions:

(1) knowing that the transaction was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership or control of said proceeds, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(2) knowing that the transaction was designed in whole or in part to avoid a transaction reporting requirement under Federal Law, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii).

C. <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED</u>

1. Defendant ATC would accept cash deposits on behalf of certain Colombian and Mexican clients in amounts greater than $10,000 and would not require identification from individuals bringing in such cash to defendant ATC.

2. Defendant ATC would instruct that deposits of cash into defendant ATC's bank accounts originating from certain Colombian and Mexican clients should be in amounts under $10,000.

3. Defendant ATC would credit the accounts of the Colombian and Mexican clients on whose behalf the cash was delivered, or on whose behalf the deposit was made.

D. <u>OVERT ACTS</u>

In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, defendant ATC, and others known and unknown to the Grand Jury, committed various overt acts, on or about the following dates, within the Central District of California, and elsewhere, including, but not limited to, the following:

1. On September 28, 2005, defendant ATC received approximately $100,000 in cash and later deposited this cash in a bank account controlled by defendant ATC in the form of multiple deposits in sums less than $10,000.

2. On December 6, 2005, defendant ATC received approximately $150,000 in cash and later deposited this cash in a bank account controlled by defendant ATC in the form of multiple deposits in sums less than $10,000.

3. On December 23, 2005, defendant ATC received

approximately $149,000 in cash to be credited to a Colombian customer, and defendant ATC later deposited this cash in a bank account controlled by defendant ATC in the form of multiple deposits in sums less than $10,000.

4. On December 28, 2005, defendant ATC received approximately $150,000 in cash to be credited to a Colombian customer, and defendant ATC later deposited this cash in a bank account controlled by defendant ATC in the form of multiple deposits in sums less than $10,000.

5. On July 11, 2006, defendant ATC confirmed its receipt of cash deposits of $7,000 and $6,000 made on July 10, 2006, to be credited to the account of a Colombian customer.

6. On January 10, 2008, defendant ATC received approximately $46,200 in cash and later deposited this cash in a bank account controlled by defendant ATC in the form of multiple deposits in sums less than $10,000.

7. On March 14, 2008, defendant ATC confirmed its receipt of the following cash deposits to be credited to the account of a Colombian customer: $9,570 on March 12, 2008; $5,000 on March 12, 2008; $4,540 on March 12, 2008; and $9,230 on March 13, 2008.

8. On May 13, 2008, defendant ATC received approximately $50,000 in cash and later deposited this cash in a bank account controlled by defendant ATC in the form of multiple deposits in sums less than $10,000.

9. On January 6, 2009, defendant ATC received approximately $65,000 in cash and later deposited this cash in a bank account controlled by defendant ATC in the form of multiple deposits in sums less than $10,000.

## Structured Deposits of Cash

The Grand Jury re-alleges and incorporates by reference paragraphs 13 through 76 setting forth the overt acts of the conspiracy charged in Count One.

COUNT THREE

[18 U.S.C. § 371]

A. OBJECT OF THE CONSPIRACY

Beginning on a date unknown, and continuing to on or about July 1, 2008, in Los Angeles County, within the Central District of California, and elsewhere, defendant LING YU ("YU"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit an offense against the United States, in violation of Title 18, United States Code, Section 371, namely, to smuggle bulk cash out of the United States, in violation of Title 31, United States Code, Section 5332(a).

B. MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1. Defendant YU and an unindicted co-conspirator would break up currency and monetary instruments totaling over $10,000 into amounts less than $10,000.

2. Defendant YU and an unindicted co-conspirator would take these smaller sums of cash and monetary instruments with them on an airplane traveling from Los Angeles to Taiwan, without notifying customs officials that they were transporting a total amount of cash and monetary instruments in excess of $10,000 out of the United States.

C. OVERT ACTS

In furtherance of the conspiracy, and to accomplish the object of the conspiracy, on or about July 1, 2008, defendant YU

and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

1.  Defendant YU and an unindicted co-conspirator drove from defendant Angel Toy Corporation to the Los Angeles International Airport while in possession of approximately $24,000 in cash and monetary instruments.

2.  Defendant YU and an unindicted co-conspirator checked in for their flight from Los Angeles to Taiwan and checked a piece of luggage containing approximately $6,000 in sequentially numbered American Express travelers checks.

3.  Defendant YU and an unindicted co-conspirator each carried approximately $9,000 in cash on their persons as they attempted to board China Airlines Flight Number 5 for Taiwan.

4.  Defendant YU and an unindicted co-conspirator did not declare to any customs officer the approximately $24,000 in cash and monetary instruments that they possessed between them and attempted to transport out of the United States.

5.  When questioned by customs officials as they attempted to board their flight from Los Angeles to Taiwan, defendant YU and an unindicted co-conspirator claimed not to know one another, even though they were husband and wife.

## COUNT FOUR

[31 U.S.C. § 5324(c)(3), (d)(2)]

On or about July 1, 2008, in Los Angeles County, within the Central District of California, defendant LING YU ("YU") knowingly structured, assisted in structuring, and attempted to structure the exportation of monetary instruments, for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5316.

The Grand Jury further alleges that defendant YU committed this offense while violating another law of the United States and as part of a pattern of illegal activity involving more than $100,000 in a twelve-month period.

COUNT FIVE

[18 U.S.C. § 1512(b)(1), (b)(2)]

On or about April 29, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendant ANGEL TOY CORPORATION and defendant MEICHUN CHENG HUANG, also known as ("aka") "Mei Huang," aka "Mei Chun Cheng Huang," knowingly intimidated, threatened, and corruptly persuaded, and attempted to knowingly intimidate, threaten, and corruptly persuade, another person, namely, R.E., with the intent to influence and prevent R.E.'s testimony in an official proceeding, and to cause and induce R.E. to withhold testimony from an official proceeding.

FORFEITURE ALLEGATION

[31 U.S.C. § 5317(c)(1)]

1. Upon conviction of Counts One and/or Two, defendant ANGEL TOY CORPORATION, defendant LING YU, defendant MEICHUN CHENG HUANG, also known as ("aka") "Mei Huang," aka "Mei Chun Cheng Huang," defendant XIAOXIN JU, aka "Judy," and defendant JOSE LEONARDO CUEVAS OTALORA, aka "Leonardo Cuevas," shall forfeit to the United States of America all property, real or personal, involved in the offense and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

    a. $5,155,970.40, the amount structured into the Bank of America ("BOA") bank account in the name of defendant ATC with an account number ending in 3388;

    b. $3,479,077.99, the amount structured into the BOA bank account in the name of defendant ATC with an account number ending in 5718; and,

    c. $5,679.03, the amount structured into the BOA bank account in the name of defendant ATC with an account number ending in 2075.

2. If any of the property described above, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the

```
                    court;
        d.  has been substantially diminished in value; or
        e.  has been commingled with other property that
            cannot be divided without difficulty,
```

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 31, United States Code, Section 5317(c), and by Title 28, United States Code, Section 2461(c).

                                        A TRUE BILL

                                        /s/
                                        _____
                                        Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

*David A. Goodman, Asst. U.S. Atty*
*Deputy Chief, Criminal Division, FOR:*

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division


ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Violent and Organized Crime Section


PETER A. HERNANDEZ
Assistant United States Attorney
Deputy Chief, Violent and Organized Crime Section


SARAH LEVITT
Assistant United States Attorney
Violent and Organized Crime Section