ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
SARAH LEVITT (Cal. State Bar No.: 233646)
Assistant United States Attorney
Violent & Organized Crime
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2579
    Facsimile: (213) 894-3713
    E-mail: sarah.levitt@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR No. 10-718-SJO |
|               Plaintiff, | ) <u>PLEA AGREEMENT FOR DEFENDANT</u> |
| | ) <u>ANGEL TOY CORPORATION</u> |
|           v. | ) |
| ANGEL TOY CORPORATION, et al., | ) |
| | ) |
|          Defendants. | ) |

    1.    This constitutes the plea agreement between ANGEL TOY CORPORATION ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

    2.    Defendant understands and agrees that this Agreement is part of a "package deal" in which the disposition of the case

1  against defendant is tied to and conditioned on the disposition

2  of cases against two other defendants, namely, co-defendants Ling

3  Yu and Meichun Cheng Huang.  Accordingly, defendant and the USAO

4  agree that this Agreement and the obligations it creates will not

5  become binding on the USAO and defendant unless and until by no

6  later than March 8, 2011: (a) defendant executes this Agreement

7  and enters a guilty plea in accordance with this Agreement; and

8  (b) co-defendants Ling Yu and Meichun Cheng Huang execute their

9  plea agreements with the USAO and enter guilty pleas in

10  accordance with those agreements.  Defendant acknowledges that

11  defendant has discussed with defendant's attorney, and carefully

12  considered, the possible advantages and disadvantages to

13  defendant of entering into this Agreement as part of the package

14  deal; defendant is entering into this Agreement as part of the

15  package deal freely and voluntarily because defendant believes

16  this Agreement and the package deal to be in defendant's best

17  interests; and defendant is not entering into this Agreement as

18  part of the package deal because of threats, coercion, or other

19  undue influence by the USAO or by the other defendants who are

20  part of the package deal, their counsel, or anyone acting on

21  their behalf.

22                    DEFENDANT'S OBLIGATIONS

23       3.  Defendant agrees to:

24            a) At the earliest opportunity requested by the USAO

25  and provided by the Court, appear and plead guilty to Count One

26  of the Indictment in United States v. Angel Toy Corporation, et

27  al., CR No. 10-718-SJO.

28

2

b) Not contest facts agreed to in this agreement.

c) Abide by all agreements regarding sentencing factors contained in this agreement.

d) Appear for all court appearances, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e) Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f) Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g) Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and submits a completed financial statement (form OBD-500) to the USAO prior to sentencing.

h) Truthfully disclose to law enforcement officials at a date and time to be set by the USAO, the location of, defendant's ownership interest in, and all other information known to defendant about, all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, defendant's illegal activities, and to forfeit all right, title, and interest in and to such items, specifically including all, right, title and interest in and to all U.S. currency, including the following funds seized by law enforcement officials, which defendant admits constitute proceeds of defendant's illegal activity in violation of 31 U.S.C. § 5324(c)(3):

i.   $103,678.04 from Bank of America ("BofA")
account number -5718 in the name of Angel Toy
Corporation seized on June 18, 2009;

ii.   $44,516.53 from BofA account number -3388 in
the name of Angel Toy Corporation seized on June 18,
2009;

iii. $41,345.81 from BofA account -8890 in the
name of Angel Toy Corporation seized on August 11,
2009;

iv.   The following monetary instruments seized at
Angel Toy Corporation, 930 South Alameda Street, Los
Angeles, California on June 18, 2009:

      a.   $29,225.00 in U.S. Currency;

      b.   $16,200 in American Express Travelers
Checks;

      c.   301 Chinese Yuan Renminbi VL: $39.64 in
U.S. Currency;

      d.   19,980 Hong Kong Dollars VL: $2,371.63
in U.S. Currency; and,

      e.   1,100 New Taiwan Dollars VL: $32.74 in
U.S. Currency.

i)   The Court's entry of a joint and several money
judgment of forfeiture with co-defendants Ling Yu and Meichun
Cheng Huang in the amount of $1,000,000.00, which the parties
agree is the appropriate amount of property involved in
defendant's illegal activity in violation of 31 U.S.C.
§ 5324(c)(3), pursuant 21 U.S.C. § 853(p) and Fed. R. Crim. P.
32.2(e) as alleged in the criminal forfeiture allegation in the

Indictment.

        j)    Take whatever steps are necessary to pass to the United States clear title to the assets described above in paragraph 3(h), including, without limitation, the execution of a Consent Judgment of Forfeiture in the related civil forfeiture action, <u>United States v. $189,540.38 in Bank Funds; $29,225.00 in U.S. Currency; $16,200 in American Express Travelers Checks; 301 Chinese Yuan Renminbi VL: $39.64 in U.S. Currency; 19,980 Hong Kong Dollars VL: $2,371.63 in U.S. Currency; and 1,100 New Taiwan Dollars VL: $32.74 in U.S. Currency</u>, CV 09-7682-SJO(AGRx), and the completing of any other legal documents required for the transfer of title to the United States.

        k)    Not contest any administrative forfeiture proceedings or civil judicial proceedings commenced against these assets pursuant to 21 U.S.C. § 881(a)(6), 31 U.S.C. § 5317(c)(2) and 18 U.S.C. § 984.

        l)    Not assist any individual or entity in any effort falsely to contest the forfeiture of the assets described above.

        m)    Not claim that reasonable cause to seize the assets was lacking.

        n)    Prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

        o)    That forfeiture of assets described above shall not be counted toward satisfaction of any special assessment, fine, costs, or any other penalty the Court may impose, other than as set forth in paragraph 3(q) below.

        p)    At the time of sentencing, to pay a fine in the

1 amount of $200,000 and to not claim an inability to pay this

2 fine.

3      q)   That forfeiture of the assets described in

4 paragraphs 3(h)(i) - 3(h)(iv) above shall be counted toward

5 satisfaction of the money judgment of forfeiture in the amount of

6 $1,000,000.

7                 THE USAO'S OBLIGATIONS

8   4.  The USAO agrees to:

9      a) Not contest facts agreed to in this agreement.

10      b) Abide by all agreements regarding sentencing factors

11 contained in this agreement.

12      c) At the time of sentencing, move to dismiss the

13 remaining counts of the indictment as against defendant. Defendant

14 agrees, however, that at the time of sentencing the Court may

15 consider the dismissed counts in determining the applicable

16 Sentencing Guidelines range, the propriety and extent of any

17 departure from that range, and the sentence to be imposed after

18 consideration of the Sentencing Guidelines and all other relevant

19 factors under 18 U.S.C. § 3553(a).

20      d) At the time of sentencing, provided that defendant

21 demonstrates an acceptance of responsibility for the offense up to

22 and including the time of sentencing, recommend a one-level

23 reduction in the applicable Sentencing Guideline culpability score,

24 pursuant to U.S.S.G. § 8C2.5(g)(3).

25      e) Recommend to the Court that the criminal fine imposed

26 against defendant not exceed $200,000.

27      f) Recommend to the Court that the fine and forfeiture

28 specified in paragraphs 3(h)-3(q) above represent a fair

1  disposition of this case against defendant and not to seek any
2  additional fines, forfeitures, restitution, or penalties against
3  defendant.

4         g) Recommend to the Court that forfeiture of the assets
5  described in paragraphs 3(h)(i)-3(h)(iv) above shall be counted
6  toward satisfaction of the money judgment of forfeiture in the
7  amount of $1,000,000.

8                        NATURE OF THE OFFENSE

9     5.  Defendant understands that for defendant to be guilty of
10  the crime charged in Count One (violation of Title 18, United
11  States Code, Section 371), the following must be true: (1) there
12  was an agreement between two or more persons to structure currency
13  transactions with domestic financial institutions, knowing of the
14  domestic financial institution's legal obligation to report
15  transactions in excess of $10,000, and for the purpose of evading
16  that reporting obligation; (2) defendant, acting through one or
17  more of its employees, became a member of the conspiracy knowing of
18  its object and intending to help accomplish it; and (3) one of the
19  members of the conspiracy performed at least one overt act for the
20  purpose of carrying out the conspiracy.

21     Defendant admits that defendant is, in fact, guilty of this
22  offense as described in Count One of the Indictment.

23                    PENALTIES AND RESTITUTION

24     6.  Defendant understands that the statutory maximum sentence
25  that the Court can impose for an organization for a violation of
26  Title 18, United States Code, Section 371, is: (a) a fine of
27  $500,000 or twice the gross gain or gross loss resulting from the
28  offense, whichever is greatest; (b) a term of probation of five

                                 7

1 years; and (c) a mandatory special assessment of $400.

2    7.  Defendant understands that the conviction in this case may

3 subject defendant to various collateral consequences, including,

4 but not limited to, suspension or revocation of a license.

5 Defendant understands that unanticipated collateral consequences

6 will not serve as grounds to withdraw defendant's guilty plea.

7    8.  As part of this agreement, defendant and the USAO agree

8 that an order of restitution is not appropriate in this case

9 because it would be impracticable to identify specific victims and

10 quantify a respective pecuniary loss to each of them sustained as

11 a result of defendant's conduct.

12                          FACTUAL BASIS

13    9.  Defendant and the USAO agree to the statement of facts

14 attached hereto as Exhibit A.  Defendant and the USAO agree that

15 this statement of facts is sufficient to support a plea of guilty

16 to the charge described in this agreement and to establish the

17 Sentencing Guidelines factors set forth in paragraph 11 below, but

18 is not meant to be a complete recitation of all facts relevant to

19 the underlying criminal conduct or all facts known to either party

20 that relate to that conduct.

21                        SENTENCING FACTORS

22    10.  Defendant understands that in determining defendant's

23 sentence the Court is required to consider the factors set forth in

24 18 U.S.C. § 3553(a)(1)-(7), including the kinds of sentence and

25 sentencing range established under the Sentencing Guidelines.

26 Defendant understands that the Sentencing Guidelines are advisory

27 only, that defendant cannot have any expectation of receiving a

28 sentence within the Sentencing Guidelines range, and that after

8

considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

11.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Offense Level: The base offense level for the crime charged in Count One is 6, pursuant to U.S.S.G. § 2S1.3(a)(2).   The base offense level is increased by 16 levels based on the value of the funds exceeding $1,000,000, pursuant to U.S.S.G. §§ 2S1.3(a)(2) and 2B1.1(b)(1)(I).   This results in an offense level of 22 pursuant to U.S.S.G. § 8C2.3.

Base Fine:   The base fine is $1,200,000, which corresponds to an offense level of 22, pursuant to U.S.S.G. §§ 8C2.4(a)(1), (d). The parties agree that calculation of pecuniary gain or pecuniary loss would unduly complicate or prolong the sentencing process, and therefore gain or loss should not be used for determination of the base fine, pursuant to U.S.S.G. § 8C2.4(a).

Culpability Score:   Defendant starts with a culpability score of 5 points, pursuant to U.S.S.G. § 8C2.5(a).   Because the organization had more than 10 but less than 50 employees and an individual within substantial authority personnel participated in, condoned, or was willfully ignorant of the offense, this is increased by 1 point, pursuant to U.S.S.G. § 8C2.5(b)(5).   The parties agree not to seek any adjustments to the culpability score available under U.S.S.G. §§ 8C2.5(c) through 8C2.5(f).   Provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, the parties

9

1   recommend that 1 point be subtracted under § 8C2.5(g)(3).  Applying

2   all of these agreements, defendant's total culpability score is 5.

3   Fine Range:  Under U.S.S.G. § 8C2.6, the minimum and maximum

4   multipliers for a defendant with a culpability score of 5 are 1.0

5   and 2.00.   Applying these multipliers to the base fine of

6   $1,200,000 results in an advisory fine range of $1,200,000 to

7   $2,400,000, pursuant to U.S.S.G. § 8C2.7.

8   Organizational Probation: The parties do not believe that a

9   term of probation, pursuant to U.S.S.G. § 8D1.1, is warranted

10   because defendant has agreed to pay the entire agreed upon fine at

11   the time of sentencing and has agreed to the forfeiture provisions

12   set forth in paragraphs 3(h) - 3(o) above.

13   Remedial Order: The parties do not believe that a remedial

14   order, pursuant to U.S.S.G. § 8B1.2, is warranted.

15   Community Service: The parties do not believe that a term of

16   community service, pursuant to U.S.S.G. § 8B1.3, is warranted.

17   Defendant and the USAO reserve the right to argue that

18   additional specific offense characteristics, adjustments, and

19   departures under the Sentencing Guidelines are appropriate.

20   12.  Defendant understands that there is no agreement as to

21   defendant's criminal history or criminal history category.

22   13.  Defendant and the USAO reserve the right to argue for a

23   sentence outside the sentencing range established by the Sentencing

24   Guidelines based on the factors set forth in 18 U.S.C. §

25   3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).  Defendant and the

26   USAO agree, however, that the fine and forfeiture amounts specified

27   in paragraphs 3(h) - 3(q) above represent a fair disposition of

28   this case and agree not to argue that the fine and forfeiture

10

amounts imposed by the Court should be any different than the amounts specified in paragraphs 3(h) - 3(q) above.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

14. Defendant understands that by pleading guilty, defendant gives up the following rights:

a) The right to persist in a plea of not guilty.

b) The right to a speedy and public trial by jury.

d) The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e) The right to confront and cross-examine witnesses against defendant.

f) The right to present evidence in opposition to the charges, including calling witnesses and subpoenaing those witnesses to testify;

g) The right, if defendant chose not to present evidence, to have that choice not be used against defendant; and

h) Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF DNA TESTING</u>

15. Defendant has been advised that the government has in its possession the following items of physical evidence that could be subjected to DNA testing: papers, documents, cash, and other items seized from Angel Toy Corporation on or about June 18, 2009. Defendant understands that the government does not intend to conduct DNA testing of any of these items. Defendant understands: (a) before entering a guilty plea pursuant to this

11

agreement, defendant could request DNA testing of evidence in
this case; and (b) with respect to the offense to which defendant
is pleading guilty pursuant to this agreement, defendant would
have the right to request DNA testing of evidence after
conviction under the conditions specified in 18 U.S.C. § 3600.
Knowing and understanding defendant's right to request DNA
testing, defendant voluntarily gives up that right with respect
to both the specific items listed above and any other items of
evidence there may be in this case that might be subject to DNA
testing.   Defendant understands that by giving up this right: (a)
defendant is giving up any ability to request DNA testing of
evidence in this case in the current proceeding, in any
proceeding after conviction under 18 U.S.C. § 3600, and in any
other proceeding of any type; and (b) defendant will never have
another opportunity to have the evidence in this case, whether or
not listed above, submitted for DNA testing, and will never have
an opportunity to employ the results of DNA testing to support a
claim that defendant is innocent of the offense to which
defendant is pleading guilty.

<u>WAIVER OF APPEAL OF CONVICTION</u>

16. Defendant understands that, with the exception of an
appeal based on a claim that defendant's guilty plea was
involuntary, by pleading guilty defendant is waiving and giving
up any right to appeal defendant's conviction on the offense to
which defendant is pleading guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

17. Defendant agrees that, provided the fine and forfeiture
amounts imposed by the Court do not exceed the amounts specified

12

in paragraphs 3(h)-3(q) above, and the sentence is
constitutional, defendant gives up the right to appeal any
sentence imposed by the Court, including all of the following:
(a) the procedures and calculations used to determine and impose
any portion of the sentence; (b) the fine and forfeiture imposed
by the court, provided it is within the statutory maximum; (c)
the term of probation or supervised release imposed by the Court,
provided it is within the statutory maximum; and (d) any of the
following conditions of probation or supervised release imposed
by the Court: the standard conditions set forth in General Orders
318, 01-05, and/or 05-02 of this Court.

    18.   The USAO agrees that, provided that the fine amount and
forfeiture imposed by the Court are not less than the amounts
specified in paragraphs 3(h)-3(q) above, the USAO gives up its
right to appeal any portion of the defendant's sentence.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

    19.   Defendant agrees that if, after entering a guilty plea
pursuant to this agreement, defendant seeks to withdraw and
succeeds in withdrawing defendant's guilty plea on any basis
other than a claim and finding that entry into this plea
agreement was involuntary, then (a) the USAO will be relieved of
all of its obligations under this agreement; and (b) should the
USAO choose to pursue any charge or any civil, administrative, or
regulatory action that was either dismissed or not filed as a
result of this agreement, then (i) any applicable statute of
limitations will be tolled between the date of defendant's
signing of this agreement and the filing commencing any such
action; and (ii) defendant waives and gives up all defenses based

on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

20.   Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

21.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

22.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

14

23.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b) Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c) Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND PROBATION OFFICE NOT PARTIES

24.   Defendant understands that the Court and the United States Probation Office are not parties to this agreement and

1  need not accept any of the USAO's sentencing recommendations or
2  the parties' agreements to facts or sentencing factors.
3      25.  Defendant understands that both defendant and the USAO
4  are free to: (a) supplement the facts by supplying relevant
5  information to the United States Probation Office and the Court,
6  (b) correct any and all factual misstatements relating to the
7  Court's Sentencing Guidelines calculations, and (c) argue on
8  appeal and collateral review that the Court's Sentencing
9  Guidelines calculations are not error, although each party agrees
10 to maintain its view that the calculations in paragraph 11 are
11 consistent with the facts of this case.  While this paragraph
12 permits both the USAO and defendant to submit full and complete
13 factual information to the United States Probation Office and the
14 Court, even if that factual information may be viewed as
15 inconsistent with the facts agreed to in this agreement, this
16 paragraph does not affect defendant's and the USAO's obligations
17 not to contest the facts agreed to in this agreement.
18     26.  Defendant understands that even if the Court ignores
19 any sentencing recommendation, finds facts or reaches conclusions
20 different from those agreed to, and/or imposes any sentence up to
21 the maximum established by statute, defendant cannot, for that
22 reason, withdraw defendant's guilty plea, and defendant will
23 remain bound to fulfill all defendant's obligations under this
24 agreement.  Defendant understands that no one -- not the
25 prosecutor, defendant's attorney, or the Court -- can make a
26 binding prediction or promise regarding the sentence defendant
27 will receive, except that it will be within the statutory
28 maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

27.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

28.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

ANDRÉ BIROTTE JR.
United States Attorney


_____          _____
SARAH LEVITT                       Date  2/28/1
Assistant United States Attorney


I, Connie Tam, in my capacity as Chief Executive Officer of Angel Toy Corporation ("ATC"), am authorized to enter into this plea agreement on behalf of ATC and bind ATC to it.  I have read this agreement in its entirety.  This agreement has also been read to me in Mandarin Chinese, the language I understand best.  I have obtained proper written authorization to enter into this agreement and bind ATC from the ATC Board of Directors, in the form of the ATC board resolution attached as Exhibit B to this

17

agreement.  The members of the ATC Board of Directors have
carefully reviewed every part of this agreement with ATC's
attorneys and with me.  I understand the terms of this agreement,
and, on behalf of ATC, I voluntarily agree to them.  Before
signing this agreement, I consulted with ATC's attorneys.  Those
attorneys fully advised ATC and me of ATC's rights, of possible
defenses, of the Sentencing Guideline provisions, and of the
consequences of entering into this agreement.  No other promises
or inducements have been made to ATC or me, other than those
contained in this agreement.  Furthermore, no one has threatened
or forced ATC or me, on ATC's behalf, in any way to enter into
this agreement.  Finally, on behalf of ATC, I am satisfied with
the representation of counsel which ATC received in this matter.

_____     2-24-2011
CONNIE TAM                          Date
Co-owner and Chief Executive Officer
of Angel Toy Corporation

### CERTIFICATION OF INTERPRETER

I, _Penny P. Kole_, am fluent in the written and
spoken English and Mandarin Chinese languages.  I accurately
translated this entire agreement from English into Mandarin
Chinese to Connie Tam on this date.

_____     2/24/11
Interpreter                         Date

I, Kerry Bensinger, am counsel of record in this case for
Angel Toy Corporation ("ATC").  I have carefully reviewed every

1   part of this agreement with ATC.  Further, I have fully advised

2   ATC of its rights, of possible defenses, of the Sentencing

3   Guideline provisions, and of the consequences of entering into

4   this agreement.  I believe that Connie Tam is the Chief Executive

5   Officer of ATC and is duly authorized to enter into this

6   agreement on behalf of ATC.  To the best of my knowledge and

7   belief, ATC's decision to enter into this plea agreement is an

8   informed and voluntary one.

9

10   KERRY BENSINGER                2/24/11

    Attorney for Defendant         Date

11   Angel Toy Corporation

**EXHIBIT A TO DEFENDANT ANGEL TOY CORPORATION PLEA AGREEMENT**

**FACTUAL BASIS**

Defendant Angel Toy Corporation ("ATC") is an international toy manufacturer and distributor located in Los Angeles, California. ATC is owned by co-defendants Ling Yu and Meichun Cheng Huang, along with Connie Tam.

Beginning in at least 2000 and continuing to on or about July of 2010, owners and employees of ATC entered into an agreement to structure currency transactions to evade reporting requirements at domestic financial institutions. Specifically, ATC owners and employees entered into an agreement and created an understanding that deposits of cash into ATC's bank accounts had to be under $10,000. Therefore, when individuals would provide large sums of cash to ATC - cash in excess of $10,000 - ATC owners and employees would arrange for those large sums of cash to be broken up into smaller amounts under $10,000. During the course of this conspiracy, in furtherance of this agreement, ATC employees would then deposit these smaller amounts into ATC's bank accounts. Sometimes these smaller deposits were made on the same day or on consecutive business days. Also, in furtherance of this agreement, ATC owners and employees instructed certain ATC customers, including co-defendant Leonardo Ceuvas Otalora, that when these customers made deposits of cash directly into ATC's bank accounts, those deposits had to be in increments under $10,000.

ATC owners and employees broke up these sums of cash so that the bank would not file a report, known as a Currency Transaction Report ("CTR"), documenting the deposit of more than $10,000 in cash.  During this conspiracy, ATC's owners and employees knew of the bank's legal obligation to report cash transactions in excess of $10,000 and ATC's owners and employees conspired with each other, and with customers, to break up cash deposits in order to evade this reporting requirement.  During the course of this conspiracy, over $1,000,000 was structured at ATC to evade the filing of CTRs.  Defendant, acting through its employees, became a member of this conspiracy knowing of its object and intending to help accomplish it.

**EXHIBIT B TO ANGEL TOY CORPORATE PLEA AGREEMENT**

UNANIMOUS WRITTEN CONSENT OF DIRECTORS

IN LIEU OF A SPECIAL MEETING

OF

ANGEL TOY CORPORATION
A California Corporation

Pursuant to the provisions of Section 307(b) of the California Corporations Code, the undersigned, being all of the Directors of ANGEL TOY CORPORATION, a California corporation, dispense with the formality of special meeting and hereby adopt the following resolutions:

<u>ELECTION OF OFFICERS</u>

RESOLVED, that the following person be elected to the offices indicated after such person's name, to serve at the pleasure of the Board of Directors until the next regular meeting of the Board of Directors (or a Written Consent in lieu of such meeting) following the next annual meeting of the Shareholders of this corporation and until such person's successor is elected and qualified, or until such person's earlier resignation or removal or such person's office is declared vacant in the manner provided in the Bylaws of this corporation:

CONNIE TAM – President
LING YU -- Chief Financial Officer
MEI HUANG – Secretary

<u>PLEA AGREEMENT</u>

WHEREAS, this corporation has been named a defendant in the case of <u>United States of America y. Angel Toy Corporation</u>, et al., before the United States District Court Central District of California, CR No. 10-718-SJO (the "**Case**"); and

WHEREAS, the Board deems it advisable and in the best interest of this corporation to enter into that certain Plea Agreement for Defendant Angel Toy Corporation, substantially in the form attached hereto as <u>**Exhibit A**</u> (the "**Plea Agreement**"), by and among the corporation and the United States Attorney's Office for the Central District of California, providing for, among other things, a plea of guilty to the charge against the corporation in the Case for purposes of being sentenced by the Court in the Case (the "**Plea**"); and

WHEREAS, as a result of the Plea and the Plea Agreement, the corporation will be subject to sentencing by the Court and will be responsible to pay certain fines and penalties as provided in the Plea Agreement.

1

NOW, THEREFORE BE IT RESOLVED, that the Board hereby authorizes and approves the Plea; and further

RESOLVED, that the Board hereby authorized and approves the execution, delivery and performance by the corporation of the Plea Agreement and the payment of the fines and penalties imposed in connection therewith; and further

RESOLVED, that the President of the corporation be, and hereby is authorized and directed to execute on behalf of the corporation the Plea Agreement, and such other agreements and documents as she deems reasonably necessary to carry out the transactions contemplated by the Plea Agreement.

GENERAL RESOLUTIONS

IT IS FURTHER RESOLVED, that the officers and directors of the corporation hereby be, and each of them individually is, authorized and directed, in the name and on behalf of the corporation, to take all such further action to execute and deliver all such further instruments and documents, and to pay all such expenses as in their judgment should be necessary, advisable or proper in order to fully carry out the intent and purpose of the foregoing resolutions, the taking of any such actions and the delivery of any such instruments and documents to constitute conclusive evidence of the existence of such discretionary authority.

This Written Consent shall be filed with the Secretary of this Corporation who is requested to insert it in this Corporation's minute book.

Dated February ___, 2011          _____
                                                  CONNIE TAM

Dated February ___, 2011          _____
                                                  LING YU

Dated February ___, 2011          _____
                                                  MEICHUN HUANG

2

NOW, THEREFORE BE IT RESOLVED, that the Board hereby authorizes and approves the Plea; and further

RESOLVED, that the Board hereby authorized and approves the execution, delivery and performance by the corporation of the Plea Agreement and the payment of the fines and penalties imposed in connection therewith; and further

RESOLVED, that the President of the corporation be, and hereby is authorized and directed to execute on behalf of the corporation the Plea Agreement, and such other agreements and documents as she deems reasonably necessary to carry out the transactions contemplated by the Plea Agreement.

## GENERAL RESOLUTIONS

IT IS FURTHER RESOLVED, that the officers and directors of the corporation hereby be, and each of them individually is, authorized and directed, in the name and on behalf of the corporation, to take all such further action to execute and deliver all such further instruments and documents, and to pay all such expenses as in their judgment should be necessary, advisable or proper in order to fully carry out the intent and purpose of the foregoing resolutions, the taking of any such actions and the delivery of any such instruments and documents to constitute conclusive evidence of the existence of such discretionary authority.

This Written Consent shall be filed with the Secretary of this Corporation who is requested to insert it in this Corporation's minute book.

Dated February 24, 2011

CONNIE TAM

Dated February 24, 2011

LING YU

✓ Dated February 24, 2011

MEICHUN HUANG